## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**JASON EDWARD EDDINGTON,**     :

         **Petitioner**         :     **CIVIL ACTION NO. 3:16-1775**

           **v.**            :        **(JUDGE MANNION)**

**COMMONWEALTH OF PA,**      :

        **Respondent**        :


### MEMORANDUM

Petitioner, Jason Edward Eddington, files the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his convictions and sentences imposed in the Court of Common Pleas of York County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.


## I.  Background

The procedural and factual background underlying Eddington's conviction and sentence was adopted from the April 26, 2017 Memorandum Opinion of the Pennsylvania Superior Court, affirming Petitioner's judgment of sentence, and is as follows:

The certified record contains the following facts and procedural history. In July 2012 Appellant, using the alias "Frank Winans,"[1] and two co-conspirators, ran a tree trimming and roofing scam under the company name of Above the Rest Tree Service targeting elderly women who appeared to be living alone. Appellant would frequently provide proposals or have discussions with the victims about work he and his co-conspirators had spotted as allegedly needing done. The co-conspirators would frequently do the physical labor, and Appellant would act as the supervisor/administrator, occasionally assisting in the physical work. When the job was allegedly finished, Appellant and his co-conspirators intimidated the victims into paying between $1,000 and $6,000 for low-quality, minimal work, insisting that the check be written out to Frank Winans, the name Appellant gave them as his own. In one case, Appellant gave the victim an estimate of $750 to trim a tree, but then told her they did some additional work on her chimney while there were up there, and presented her with a bill for $4,000. She paid $4,000 out of fear that the large men standing in her kitchen with her would hurt her if she did not pay the full amount. In another case, Appellant would not given an estimate, and when the work was done, he charged the victim $5,000 and one of his co-defendants drove her to the bank to get the payment in cash.

The police arrested Appellant and his co-defendants on July 25, 2012 at a bank when they went to cash another one of their victim's checks.

The Commonwealth filed the first criminal complaint on July 26, 2012, in case CP-67-CR-00007173; the second and third were filed at CP-67-CR-00007170 and 7172 on August 27, 2012; and the fourth at CP-67-00008156 on September 11, 2012. The Commonwealth charged Appellant with 17 offenses, including multiple counts of Theft by Deception, Conspiracy, Home

---

[1] Appellant also used the alias "Mark Cummins."

Improvement Fraud, and Deceptive Business Practices.[2] On January 2, 2013, the court consolidated the cases for trial.

Appellant filed numerous counseled[3] and *pro se* pre-trial motions, sometimes serially in quadruple despite the consolidation, including Motions to Suppress, Motions for Removal of Counsel, and Rule 600 Motions.[4] As discussed *infra*, the trial court denied Appellant's Rule 600 Motions after a hearing on October 29, 2013. **See** N.T. Hearing, 10/29/13, at 12, 24-25; Order, dated 10/29/13, at 3. Appellant ultimately chose to represent himself at trial, with assistance from stand-by counsel (his third appointed attorney). **See** N.T. Hearing at 13-14; Order at 2-3.

Appellant's jury trial lasted from September 3 to September 5, 2014, at which investigating detectives, tree experts, and the victims, among others, testified on behalf of the Commonwealth. Appellant presented testimony from the arresting and investigating officers, an elderly man who testified that he was married to one of the victims and was himself incapacitated, and a private investigator, who had sent handwriting samples to an expert at the behest of Appellant. The jury found Appellant guilty of four counts of theft by deception, four counts of conspiracy to commit theft by deception, three counts of deceptive business

---

[2] It was later determined that at the time of the arrest, Appellant had outstanding bench warrants from two other states, one of which was the name of "Frank Winans."

[3] The public defenders' office initially represented Appellant.

[4] The court clerk forwarded all documents filed *pro se* to counsel, although many of them are also included in the certified record.

practices, and one count of home improvement fraud.[5,6] The court ordered a pre-sentence investigation ("PSI").

Appellant filed a *pro se* Notice of Appeal on September 12, 2014, which he subsequently withdrew as prematurely filed. On September 19, 2014, the court appointed counsel at Appellant's request. On October 20, 2014, the court noted, *inter alia*, its review of the PSI report and sentenced Appellant to consecutive sentences for an aggregate term of 3 to 16 years' incarceration. The court also ordered restitution as part of the sentences.[7] On December 1, 2014, upon Appellant's Motion for Reconsideration, the court amended the sentences to an aggregate of 24 to 84 months' incarceration, and to include RRRI eligibility.[8]

Appellant filed a counseled Notice of Appeal on December 4, 2014. Counsel filed a Pa.R.A.P. 1925(b) Statement; Appellant submitted a 17-page *pro se* letter indicating 17 issues he wanted raised in his appeal; the trial court forwarded that letter to

---

[5] 18 Pa.C.S. §3922(a)(1); 18 Pa.C.S. §903(a); 18 Pa.C.S. §4107(a)(2); 73 P.S. §517.8(a)(3), respectively.

[6] In addition, during trial, the court found Appellant in contempt of court three times, for which the court sentenced him to two consecutive six-month terms of incarceration and a $1,000 fine. The two terms were to run consecutive to the sentences imposed for his criminal convictions. The contempt convictions are not part of this appeal.

[7] In three of the four cases, the trial court ordered Appellant to pay his *pro rata* share of restitution. In case number 7170, however, the Commonwealth sought $2,000 only from Appellant, solely in connection with count one, Home Improvement Fraud – Misrepresents or Conceals Contractor Identifying Information, 73 P.S. §517.8(a)(3). **See** N.T. Sentencing, 10/20/14, at 21; Court Commitment, dated 12/15/14, at 4.

[8] The trial court ordered the following terms of incarceration:  On CP-67-CR-0007172-2012, 12 months; on CP-67-CR-0007173-2012, a consecutive term of 12 to 24 months; on CP-67-CR-0007170-2012, 12 to 84 months to run concurrent to CP-67-CR-0008156-2012; on CP-67-CR-8156-2012, 12 to 24 months to run concurrent to nos. 7173, 7172, and 7170. **See** Sentence Reconsideration Orders.

- 4 -

counsel.[9] Ultimately, this Court dismissed the appeal for failure to file an appellate brief.

On December 23, 2015, Appellant filed a *pro se* letter seeking reinstatement of his appeal rights *nunc pro tunc*, which the trial court granted on January 8, 2016. The court appointed current counsel, Christopher D. Moore, Esq.

On February 2, 2016, Attorney Moore filed a Notice of Appeal. On March 16, 2016, after the grant of an extension, counsel filed a Pa.R.A.P. 1925(b) Statement. On March 30, 2016, the trial court filed a Pa.R.A.P. 1925(a) Opinion.

In July 2016, Attorney Moore filed a Motion to Withdraw as Counsel and what purported to be an **Anders-McClendon** Brief. Appellant filed a response, referencing a letter he had allegedly sent to the trial court and to Attorney Moore that raised "numerous relevant issues for direct appeal." **See** Appellant's Response to **Anders-McClendon** Brief, filed 7/27/16. Appellant did not annex a copy of that letter to his Response.

On September 29, 2016, Appellant filed *pro se* with this Court a document entitled "Motion for Withdrawal of Counsel *Inter Alia* Ineffective Assistance of Counsel", requesting that he be allowed to proceed *pro se* and to file an Amended Pa.R.A.P. 1925(b) Statement and an "Extensive All-Inclusive Detailed Appellate Brief, *Pro-se*." Motion for Withdrawal of Counsel *Inter Alia* Ineffective Assistance of Counsel, filed 9/29/16.

On January 18, 2017, we filed a memorandum decision denying both Appellant's Motion and counsel's Motion to Withdraw, and

---

[9] When that counsel refused to raise issues, Appellant had deemed meritorious, Appellant filed a *pro se* petition in this Court alleging ineffective assistance of appellate counsel. We remanded with instruction, and the trial court held a **Grazier** hearing in which Appellant stated he did not want to proceed *pro se* and would continue with his appellate counsel. Appellate counsel failed to file a brief, however, and this Court dismissed the appeal.

directing counsel to file a proper **Anders** brief.[10] **See Commonwealth v. Eddington**, 210 MDA 2016 (Pa. Super. filed Jan. 18, 2017) (finding counsel's Brief deficient). On March 13, 2017, Counsel filed a Motion to Withdraw and a new **Anders** Brief, which are not before us.

The **Anders** Brief raises the following 12 issues on Appellant's behalf:

WHETHER THE COURT ABUSED ITS DISCRETION IN THE FOLLOWING ISSUES:

> 1. Judge failing to recuse himself as a witness was a neighbor of the Judge 20 years ago;
>
> 2. Failure to allow handwriting expert to testify as witness;
>
> 3. Judge referring to defendant as noise machine in front of the jury;
>
> 4. Judge failing to allow defendant to submit his legal documents as handwriting samples to the jury;
>
> 5. Judge failure to allow defendant to call correctional officer regarding defendant's handwriting;
>
> 6. Judge failing to instruct jury on contract law;
>
> 7. Judge ordering restitution to witness who testified she was not owed any money;
>
> 8. Ruling on Rule 600 issue;

---

[10] Appellant thereafter filed two *pro se* letters requesting that we not grant counsel any extensions of time to file, and further requesting that, because he filed a Petition for Writ of *Habeas Corpus* in the federal district court that we "relinquish jurisdiction immediately" to that court. **See** Appellant's Letter, dated 2/23/17.

9. <u>Brady</u> violation regarding bank video;

10. Failure to allow subpoena of Officer Davenport;

11. Unlawful seizure by police of signature of Frank Winans;

12. Failure to allow defendant to explain theory of the case in closing argument.

**See Anders** Brief at 4-5 (numbered for clarity); Pa.R.A.P. 1925(b)Statement.

On April 11, 2017, Appellant filed a 95-page Response to counsel's **Anders** Brief ("Response Brief") setting forth extensive and repetitive arguments with respect to the above issues, in addition to directing our attention to his recently-filed federal *habeas corpus* petition. He also challenges the discretionary aspects of his sentence.[11],[12]

(Doc. 33-3 at 211, <u>Commonwealth v. Eddington</u>, No. 210 MDA 2016, slip op.

at 1-8). On April 26, 2017, the Pennsylvania Superior Court affirmed

_____

[11] Appellant also challenges the sentences imposed as a result of his contempt convictions and the trial court's denial of his Motion to Dismiss the civil forfeiture Petition filed by the Commonwealth. **See** Appellant's Response Brief at 59-62. Neither the contempt sentences nor the disposition of the civil forfeiture Petition is part of this appeal. We, thus, decline to address these issues.

[12] Appellant also claims that each of the judges who he had been involved at each stage of his case abused their discretion, misapplied the law, made "reckless, biased, prejudicial, malicious, vindictive rulings, decisions, and judgments out of retaliation against this Petitioner [sic]." Response Brief at 64. Appellant presents a self-serving, repetitive, irrational, vituperative, nearly incomprehensible argument incorporating each of the other arguments he made on all of the other issues raised. His assertions are unsupported by the record and, at best, meritless.

- 7 -

Eddington's judgment of sentence. Id. No further appeal or motion for collateral relief was filed.

## II.   <u>Standard of Review</u>

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but

'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it "'*was objectively unreasonable'*." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted

it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. <u>See</u>, <u>e.g.</u>, Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Eddington's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III.  Discussion

Petitioner's second amended petition raises twenty-five allegations of error across a fifty page rambling, unfocused, repetitive, and often times difficult to discern narrative. (Doc. 9). The Court addresses his claims seriatim, condensing repetitive claims when necessary.

- 13 -

### Claims A – D -  **Fourth Amendment**

Petitioner's Claims A through D raise claims that he was the subject of a "Dragnet Arrest", when he was "illegally arrested" in the Sovereign Bank. (Doc. 9 at 4-5). He further argues that police officers illegally seized and searched his truck, challenging the search warrant that was issued in this case. Id. at 5-12.

Eddington also raised these claims during post-trial motions and pursued them on direct appeal. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see also, Wright v. West, 505 U.S. 277, 293 (1992); Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002); Deputy v. Taylor, 19 F.3d 1485 (3d Cir. 1994

On February 6, 2013, Petitioner, through counsel, filed a Motion to Suppress "any and all fruits of the unlawful search and seizure which was not supported by a warrant or valid consent and prohibit the Commonwealth from using the evidence in trial." (Doc. 33-1 at 44, Motion to Suppress). The trial court conducted a hearing on April 15, 2013 (Doc. 33-1 at 167). On July 19, 2013, the suppression court denied Petitioner's motion. (Doc. 33-1 at

246). Petitioner raised his Fourth Amendment challenges in his direct appeal to the Superior Court. (Doc. 33-1 at 244-248). The state courts thoroughly considered his claims and rejected them.  Thus, because Eddington had the opportunity to fully and fairly litigate these claims, habeas relief is not available.

**Claim E.  Ineffective Assistance of Counsel with respect to Suppression Motion**

Petitioner raises several issues of ineffective assistance of counsel. (Doc. 9). However, such claims are being raised for the first time before this Court and have not been exhausted in the state court. In Pennsylvania, the only method by which a petitioner can challenge the stewardship of prior counsel is through a post-conviction relief act petition. Martinez v. Ryan, 566 U.S. 1 (2012). Petitioner has not filed a PCRA petition with the state courts. Accordingly, the state courts have not had the opportunity to assess prior counsel's effectiveness, nor has a record been created to support any such findings. Accordingly, as Petitioner has not yet filed a PCRA petition alleging ineffectiveness of counsel, such claims are unexhausted.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'

28 U.S.C. §2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Edwards, 529 U.S. at 451; Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not

legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

Eddington fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting these claims, and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496.  Federal review of Petitioner's ineffective assistance of counsel claims is foreclosed.

### Claim F – <u>Brady violations</u>

Petitioner claims that pursuant to a "conspiracy between police and prosecution," Petitioner was denied a "surveillance video" of Sovereign Bank's inside lobby "when and where Petitioner as unlawfully/illegally seized by the police," who "unlawfully/illegally search[ed] and unlawfully/illegally seiz[ed] property items from the inside cab of a white Dodge Ram Pick-up

truck." (Doc. 9 at 13). Eddington believes this video to be exculpatory under Brady v. Maryland, 373 U.S. 83 (1963).

Under Brady, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. Id. at 87. "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Cone v. Bell, 556 U.S. 449, 469–470 (2009). A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.' Kyles v. Whitley, 514 U.S. 419, 434 (1995) (internal quotation marks omitted)." Smith v. Cain, 565 U.S. 73, 75–76 (2012). A three-part test is employed in determining whether a Brady violation has occurred: (1) the evidence at issue must be favorable to the defendant, either because it is exculpatory or impeaching in nature; (2) the evidence must have been suppressed by the state either willfully or inadvertently; and (3) prejudice must result from this suppression. Dennis v. Sec'y Dept. of Corr., 834 F.3d 263, 284-85 (3d Cir. 2016) (en banc); Banks v. Dretke, 540 U.S. 668, 691 (2004)(citations omitted).

Relying on Brady, the Superior Court addressed this issue as follows:

Detective Snell testified about Appellant cashing a check at Sovereign Bank that he had received from one of his victims.

> **Appellant**: ... [D]id you get any type of surveillance video of this
> action?
>
> **Detective**:  I attempted to get the surveillance video. I had gotten the information from the manager at the corporate headquarters at the Sovereign Bank located in New Jersey. In order to get the surveillance video I put in a request on letterhead. I faxed that request in. I never got the video from Sovereign Bank, for some reason Sovereign Bank has problems, you know, sending surveillance video because I have had bank robberies before where I haven't gotten videos like I asked. So to answer your question, ... I put in a request for it. I never got the video.

N.T. Trial, 9/4/14, at 368-70.

Our review of the record indicates that the video evidence was never available to the Commonwealth. Since it did not exist, it was not available to either party; since it did not exist, it was impossible to ascertain if it was exculpatory.[13] We conclude no **Brady** violation occurred and Appellant's issue is, thus, without merit.

(Doc. 33-3 at 243).

We find the Superior Court's analysis consistent with and not contrary to federal law. Federal law requires proof that the challenged evidence was favorable to the Petitioner and was withheld by the prosecution. As noted, and found by the Pennsylvania Superior Court, the Commonwealth never

---

[13] There is no evidence that Appellant or his counsel attempted to obtain a copy of the video with a subpoena.

had possession of the video and there is no way of knowing what was on said tape. Accordingly, Petitioner has failed to show that a <u>Brady</u> violation occurred and that the state courts erred in so ruling. Thus, Petitioner is not entitled to relief on this claim.

### Claim G – <u>Petitioner's crimes are civil in nature</u>

Petitioner claims that "all of the alleged crimes in [his] Docket Numbers . . . are civil as a matter of law and not criminal matters, due to the fact that the alleged victims told police and/or testified that they did have some type of verbal and/or written contract and/or agreement with 'Above The Rest Tree Services'." (Doc. 9 at 14). The Court finds this claim patently meritless.

Petitioner does not raise a federal claim. Petitioner does not make any reference to the federal constitution or allege how his constitutional rights were violated. "It is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62 (1991). "The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or law of the United States."' Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (*per curiam*) (quoting Wilson v. Corcoran, 526 U.S. 1, 5 (2010)(*per curiam*)). Additionally, error of state law cannot be repackaged as constitutional claims merely by citing to the due process clause of the federal constitution. Johnson v. Rosemeyer,

117 F.3d 104, 110 (3d Cir. 1997). At best, Petitioner's averment is nothing more than an attempt to re-litigate state claims. Accordingly, Petitioner's claim is without merit.

### Claim H – <u>Sufficiency of Evidence</u>

Petitioner claims that "the Commonwealth's evidence at Petitioner's criminal trial was not sufficient to support and sustain a guilty verdict on any of the crimes that Petitioner was convicted of at trial." (Doc. 9 at 16).

Petitioner failed to raise this claim before the state courts and, as a result, the claim is procedurally defaulted. Eddington fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496. Consequently, the claim is procedurally defaulted and federal review is barred.

### Claim I – <u>Rule 600 Speedy</u>

Petitioner claims that the state court erred in denying his "Motion to Dismiss," in violation of "Pennsylvania Rules of Criminal Procedure, Rule 600." (Doc. 9 at 17). Eddington's claim of a violation of his rights under the

state speedy trial rule, Pa. R. Crim. P. 600, is not cognizable in this federal habeas proceeding. See 28 U.S.C. §2254(a) (providing that a federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); see also Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of alleged non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee."). Thus, this claim will be dismissed.

### Claim J – **Federal Speedy Trial**

Petitioner claims that he was "denied his right to a speedy trial as guaranteed pursuant to the Sixth (6th) Amendment," when his "criminal trial was scheduled and/or rescheduled a total of ten (10) times within a period of over twenty-five (25) months, while Petitioner was continuously incarcerated throughout the severely and extremely oppressive, prejudicial pre-trial court proceedings and also the entire judicial process." (Doc. 9 at 19).

A criminal defendant's Sixth Amendment right to a speedy trial cannot be "quantified into a specified number of days or months," Barker v. Wingo, 407 U.S. 514, 523 (1972); see also Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("Pennsylvania's 180-day rule does not define the contours of the federal constitutional right to a speedy trial."). Instead, the length of the delay is one of four factors that are considered in evaluating a speedy trial claim. Barker, 407 U.S. at 530–33. But it is a threshold factor or "triggering mechanism" for the vesting of a constitutional speedy trial right: if the delay is not "presumptively prejudicial," then there is no need to even consider the other factors that go into the balance because there is no speedy trial claim. Id. at 530; see also Doggett v. United States, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay ... since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."). Whether a delay is presumptively prejudicial depends on the "circumstances of the case." Barker, 407 U.S. at 530.

Accordingly, the Court stated that speedy trial cases should be decided on an *ad hoc* basis by considering the following four factors: the length of

delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. Id. Moreover, the Court stated:

> we regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.
>
> In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Id. at 533.

Charges were filed against Petitioner were filed on July 26, 2012. Petitioner's trial began on September 5, 2014. During that time, Eddington filed numerous motions. As noted by the Pennsylvania Superior Court, the following is but a sample of the delay caused by Petitioner as a result of his continuous filing:

> Appellant filed his first pro se Rule 600 Motion on January 22, 2013, seeking release on nominal bail, 181 days following the filing of the first criminal complaint against him. The court clerk sent the Motion to Appellant's counsel. On February 6, 2013, counsel filed a Motion to Suppress. The trial court scheduled a status hearing for March 15, 2013.
>
> On February 8, 2013, Appellant filed numerous pro se motions including, but not limited to, a "Notice of Ineffective Counsel", another Motion to Suppress, a Motion for Return of Property, and a "Motion to Dismiss for Violation of Right to Speedy Trial." On February 28, 2013, Appellant's counsel moved for a status hearing, and on March 6, 2013, the court rescheduled the Rule 600 Motion hearing to April 15, 2013.

At a hearing on March 25, 2013, the trial court granted Appellant's request and removed Appellant's attorney. On April 1, 2013, the trial court appointed new counsel. A hearing commenced on April 15, 2013, and continued on April 24, 2013; however, the court did not deal with the Rule 600 Motions at that time.

Notwithstanding the appointment of counsel, Appellant continued to send *pro se* motions and correspondence to the court. On June 13, 2013, Appellant filed another "Notice of Ineffective Counsel" to remove his new counsel. On June 24, 2013, he filed, *inter alia*, a "Notice to All Parties Concerned" that he had terminated his counsel, and a new *pro se* Rule 600 Motion, seeking release on nominal bail because 180 days had passed since the fourth criminal complaint had been filed on September 11, 2012. On July 2, 2013, and July 10, 2013, he refiled the same Rule 600 Motion, among other things, and the court scheduled a status hearing and pre-trial conference for July 31, 2013.

At the hearing on July 31, 2013, Appellant's counsel noted that Appellant had never filed a nominal bail petition, and noted that during the "substantial amount of time he's been in jail," there had been continuances in each of his cases to address his various motions, including the suppression motion. Counsel stated he did not want to file a Rule 600 motion for nominal bail, which would "eat more time until we got the order back," particularly when there was a suppression motion pending that would have caused a Rule 600 motion to be dismissed. The court then denied Appellant's request to remove counsel, noted counsel's promise to review the Rule 600 time, instructed Appellant not to submit any more pro se filings, and listed the case for the August 2013 trial term.

On August 16, 2013, Appellant filed a pro se Application to terminate his counsel's representation, and requested stand-by counsel. He also requested that the court "except" his Rule 600 motions. Letter annexed the Motion and Application for Stand-by Counsel, filed 8/16/13. He refiled the same documents on September 5, 2013, and September 13, 2013. On September 20, 2013, Appellant filed a "Re-Amended" Rule 600 Motion. The

court scheduled a hearing for October 17, 2013, on Appellant's Motion to Remove Counsel of Record and several prose motions. On October 8, 2013, Appellant filed another letter and Application for Stand-By Counsel. The trial court rescheduled the hearing for October 23, 2013.

On October 23, 2013, the court granted Appellant's Motion to represent himself, but continued the hearing to October 29, 2013, to deal with Appellant's remaining motions, including the Rule 600 Motion. Appellant's counsel indicated that he had reviewed the cases, and all of the continuances resulting from Appellant's motions, and had determined that of 422 days Appellant had been in jail, 316 days were excludable. The court instructed Appellant to submit his own calculation.

(Doc. 33-3 at 238-240).

At Petitioner's hearing on his motion to dismiss, the trial court made the following findings with respect to Petitioner's speedy trial claim during the October 29, 2013 hearing:

I addressed this in the Rule 600 motion, but both times when the case was removed from the trial list, his two pending defense motions (one was his ineffective assistance of counsel motion, the other time there was a pending omnibus motion that required rescheduling after the trial period), in both instances it was not due to Commonwealth lack of diligence. It was to give the Defendant an opportunity to present legal issues that could potentially have been either dispositive of his case or dispositive of his right to have effective counsel. For the Commonwealth to push those matters to trial at that point would have potentially violated significant constitutional rights of the Defendant and resulted in the cases being thrown out.

(Doc. 33-1 at 309-310). Following this hearing, Petitioner's second motion for suppression was scheduled for a later date. Id. On February 27, 2014, that motion, along with Petitioner's motions for subpoenas, discovery, and

medical testimony, were resolved. (Doc. 33-1 at 349- 390). On March 26, 2014, another status hearing occurred to address lingering issues in Petitioner's filings. At that time, Petitioner requested a continuance of his trial. Id. at 398. The request was granted, and the trial was reset for the May trial term. Id. On June 19, 2014 during a status hearing, Petitioner stated that he had found a second handwriting expert and requested funds to cover the costs. Id. at 410. That request was approved. Id. On July 1, 2014, Petitioner filed motions *in limine*. On August 24, 2014, Judge Kelley, replacing Judge Trebilcock as trial judge, set the case for a date certain. Id. at 464.

It is more than apparent from the voluminous record in this case, that the delay in Petitioner's case proceeding to trial was the result of Petitioner's own actions. Petitioner's continuous filing of motions and making additional requests of the court, resulted in Petitioner's trial date continually being pushed back. Thus, Petitioner cannot now claim that his speedy trial rights were violated where it is more than evident that Petition's actions were the cause of the delay. Accordingly, Petitioner is not entitled to relief on this claim.

### Claim K – Trial Judge Recusal

Petitioner claims that "Honorable Judge, Thomas H. Kelley VI, erred and abused his discretion at the Petitioner's criminal trial, for failing to declare a mistrial, and/or failing to recuse and/or disqualify himself from Petitioner's

- 27 -

criminal trial pursuant to the Pennsylvania Rules of Conduct, Canon 2, Rule 2.11, Disqualification." (Doc. 9 at 24). The basis for this claim is that the one witness, Ann Sheffer, was Judge Kelley's neighbor approximately 22 years ago. Id.

Petitioner cites to no federal authority in support of this claim. This court must defer to the state court regarding its finding on Pennsylvania law. Estelle, 502 U .S. at 67-68. See also Engle v. Isaac, 456 U.S. 107, 119 (1982) (a petitioner who challenges the correctness of an application of state law without alleging a deprivation of any federal right may not obtain habeas relief); Taylor v. Horn, 504 F.3d 416, 448 (3d Cir.2007) ("The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."), cert. denied, 129 S.Ct. 92 (2008).

Moreover, Petitioner's claim is procedurally defaulted. On direct appeal, the Superior Court found this claim to be waived because "Appellant failed to raise this first issue in his 1925(b) Statement." (Doc. 33-3 at 221). A state court decision relying on Rule 1925 of the Pennsylvania Rules of Appellate Procedure constitutes an independent and adequate state ground, resulting in a procedural default of the underlying claim. Kirnon v. Klopotoski, 620 F.Supp.2d 674, 684, 696 (E.D.Pa.2008). This court cannot excuse the procedural default because petitioner has not shown cause for the default

and actual prejudice therefrom, or that failure to consider the claim would result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 749-50.

Nonetheless, even though it was waived, the court will deny the claim on the merits. See 28 U.S.C. §2254(b)(2). The state must provide a trial before an impartial judge. Rose v. Clark, 478 U.S. 570, 577 (1986) (citing Tumey v. Ohio, 273 U.S. 510 (1927)). See also Ross v. Vaughn, 2001 WL 818359, at *13 (E.D. Pa. July 16, 2001) ("The Due Process Clause mandates a trial before a judge with no actual bias against the defendant or interest in the outcome of his particular case.").

In the case at bar, petitioner has not demonstrated that Judge Kelley was not impartial. Petitioner alleges that one of the witnesses was Judge Kelley's neighbor approximately twenty-two (22) years ago. The notes of testimony to which petitioner directs the court, (Doc. 33-2 at 122-124), memorialize the discussion which took place among the court, the prosecutor, and Petitioner regarding Petitioner's motion to recuse.

It appears from that discussion that Petitioner was concerned that the trial judge would be biased with regard to the testimony elicited from this witness. Id. Judge Kelley stated that he could be "fair and impartial" and that he didn't "think that someone living next door someone 22 years ago would give the appearance of impropriety." Id.

On appeal, the Superior Court found that:

> Although Appellant expressed his discomfort with the judge's prior acquaintance with the victim/witness, any objection he had was to the witness testifying. He did not request the judge's recusal, nor did he "produce evidence establishing bias, prejudice[,] or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." **Arnold**, **supra**, at 680. Moreover, we agree with the trial court that a neighborly acquaintanceship 22 years in the past does not support a conclusion that there is an appearance of impropriety. Appellant's first issue is, thus, without merit.

(Doc. 33-3 at 223). Thus, this Court finds that Petitioner's claim that the trial judge erred in failing to recuse himself is without merit and should be denied.

## L - <u>Noise Machine</u>

Petitioner claims that the trial judge prejudiced Petitioner when he "subject[ed] the Petitioner to inappropriate undeserved oral criticism in front of all the jurors," when, before excusing the jury, Judge Kelley referred to Petitioner "as just being a 'Noise Machine'." (Doc. 9 at 25).

This claim was addressed on appeal as follows:

> Appellant's third issue raises a claim that the judge referred to Appellant as a "noise machine" before excusing the jury for a break. Our review of the transcript reveals that the judge did not refer to Appellant as a "noise machine." Rather, upon a request from counsel to approach the bench to discuss potential exhibits, the trial court said to the jury: "Rather than have you listen to my noise machine any longer, I'm going to send you back. You can take a break for 10 minutes." N.T., 9/5/14, at 431-32. As the trial court noted in its Rule 1925(a) Opinion, the reference to "noise machine" referred to the background noise which the trial judge regularly turns on during side bars. Appellant's

mischaracterization is, at best, disingenuous. This issue is meritless.

(Doc. 33-3 at 228). This Court agrees. This issue is meritless and warrants no further attention.

### M – N – <u>Admission of Evidence/Expert witness</u>

In Claim M, Petitioner claims that the trial court abused its discretion by failing to allow Petitioner's handwriting expert to testify regarding the signature of "Frank Winans" on the back of a business card. (Doc. 9 at 26). Petitioner had requested and was granted leave to hire a handwriting expert, who provided an opinion to Petitioner's then-counsel, and counsel informed the Commonwealth nearly a year before trial that it would not be calling that individual at trial. (<u>See</u> Doc. 33-1 at 258). In Claim N, Petitioner challenges the trial court's refusal to allow Petition to submit into evidence letters that he had written from the prison and filed with the court so the jury could compare his handwriting to that which is contained on the various contracts and proposals and the on business card submitted into evidence. (Doc. 9 at 34).

Both of these claims were raised in the direct appeal proceedings. (<u>See</u> Doc. 33-3 at 224-231). However, they were couched in terms of state law violations, not federal law. A federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. <u>See</u> <u>Estelle, 502 U.S. at 67-68</u>, ("[I]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions."); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, §2254 is simply inapplicable."). Moreover, as noted above, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless, 172 F.3d at 261. "It is not sufficient that all the facts necessary to support the federal claim were before the state courts," Anderson v. Harless, 459 U.S. 4, 6 (1982), and "mere similarity of claims is insufficient to exhaust." Duncan v. Henry, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

It is undisputed that Petitioner challenged the admission of his prison handwriting samples and the denial of the opportunity to present a handwriting expert. However, he failed to give the state courts "fair notice" that he was asserting a federal constitutional claim rather than a claim that the trial court abused its discretion and violated state rules of evidence. On direct appeal, he specifically states that these issues are in violation of Pennsylvania Rules of Evidence, specifically Rule 103 and Rule 901. (Doc. 33-3 at 107-108). On Appeal, the state courts understood Petitioner's arguments to be based on state law and addressed each issue against the

backdrop of whether the trial court committed error under Rule 103 by not permitting the expert witness and under Rule 901 in the denial of post-arrest handwriting samples. (Doc. 33-3 224-231). Neither the federal Constitution nor any judicial decision based on the federal Constitution are mentioned in either Petitioner's appeal or the Superior Court opinion.

If a petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process, he must say so, not only in federal court, but in state court. Duncan, 513 U.S. at 366. Because Petitioner failed to invoke the federal due process guarantee in the state court proceedings, his current federal due process claim was not fairly presented to the Pennsylvania courts. There is no question that the Pennsylvania courts would not entertain the claim at this juncture. Hence, the claim is procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

## O. **Trial Court Error**

Petitioner claims that the trial court "erred and abused his discretion again during trial, when he acted unethical, acted bias and acted with prejudice, when he refused to allow/permit any of the jurors to review and examine firsthand for themselves, the Prosecution's alleged Evidence, of

any of these previously above stated 'Four (4) Documents' containing the 'Handwritten Name/Signature Frank Winans'," specifically "Exhibit 52 and 53." (Doc. 9 at 35-36). The Court finds this claim belied by the record which evinces the following exchange, which occurred outside of the present of the jury and following closing arguments:

**Court**: Okay. We'll start with the Commonwealth, what exhibits do you wish to go out?

**Prosecutor**: Your Honor, I won't ask for Exhibit 81 to go out. That's the one that had a whole bunch of extraneous, things that weren't' directly connected to the Defendant. At this point I'll send out – I'd like to send out everything else.

**Court**: Okay. What do you wish to have sent back, sir? We're just doing his exhibits now. Do you have an objection to any of them going out, 1 through 80?

**Standby Counsel**: 1 through 80 and 82 through 85.

**Appellant**: Actually, Your Honor, the charges no longer exist for false identification or unsworn falsification, I object to those exhibits being –

**Court**: By identification?

**Appellant**: Yes, sir, for them to be ruled upon.

**Court**: They're still admissible in this case, and I think they bear upon some of the other charges. So, while I understand that those charges were dismissed, if the Commonwealth wants me to, I would be inclined to send them out.

**Appellant**: Well, then there's no point in me objecting to anything then.

**Court**: Okay. We'll send out, with the exception of 81, all the

- 34 -

remaining exhibits

(Doc. 33-2 at 311-312). All the documents that Petitioner wanted to show the jury did in fact go to the jury. Accordingly, there is no error, and this claim is meritless.

### P – Motions *In Limine*

Petitioner claims that the trial court "erred and/or abused his discretion again for failing to not ever make a ruling on the Petitioner's 'Motion *In Limine*', dated July 1, 2014, that does in fact contain 'relevant jury instructions'." (Doc. 9 at 37). The Court finds this claim procedurally defaulted.

At the beginning of trial, Petitioner did not ask the trial court to adjudicate his motion *in limine*. (See Doc. 33-2, Trial transcript). Such failure resulted in waiver of the claim. Nor did Petitioner raise this claim before the Pennsylvania Superior Court. As such, it is procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

### Q – Jury Instruction

Petitioner claims that the trial court "erred and /or abuse his discretion again during the Petitioner's criminal trial, when the trial judge misapplied

and/or misconstrued the law, in the manner of his jury instruction on 'Theft by Deception' and also his intentional deliberate, failure to instruct the jury with the Petitioner's requested jury instruction of 'Pennsylvania Statute Title 18 §304 Ignorance or Mistake' Law and also Petitioner's requested 'Pennsylvania Law Encyclopedia, Volume 17:17-1 Criminal Law, Chapter 3 Capacity to Commit Crimes and Defenses, §48, Mistake of Law or Fact'." (Doc. 9 at 39). The Court finds this claim procedurally defaulted.

Again, Petitioner did not request a jury instruction on mistake of fact at the time of trial. (See Doc. 33-2, Trial transcript). Such failure resulted in waiver of the claim. Nor did Petitioner raise this claim before the Pennsylvania Superior Court or challenge the jury instruction that was given on theft by deception.[14] As such, his jury instruction claims are procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

**R - Dismissing Charges relating to case 7170-2012**

Petitioner alleges trial court error for "not dismissing and/or for convicting the Petitioner contrary to testimony, and contrary to law, on all the

---

[14] On appeal, Petitioner only challenged the trial court's decision to not include a jury instruction on contract law. (See Doc. 33-3 at 231).

criminal charges associated with the trial judge's, former neighbor, 'Ann Sheffer', in Docket Number: CP-67-CR-0007170-2012." (Doc. 9 at 40). Following closing arguments, Petitioner moved to dismiss case 7170-2012, the case involving the victim, Ann Sheffer. (Doc. 33-2 at 299-301). He argued that no theft had been committed because the check given to him by the victim had never been cashed. Id. The trial court denied this motion on the basis that the theft occurred when Petitioner took the check from the victim through deceptive means. Id. Petitioner was then convicted by the jury of all counts in 7170-2012. The matter of whether his conviction was based on sufficient evidence was not raised before the Pennsylvania Superior Court. (See Doc. 33-3 at 211).

In the instant petition, Eddington raises a new theory on why the charges against him should have been dismissed by the trial court. Petitioner claims that the victim, Ms. Sheffer, was unable to identify his as "Frank Winans." (Doc. 9 at 41). Per Petitioner, this inability to identify him proves that someone else used his alias. Id. Once, again, however, Petitioner has failed to preserve and present either theory to the state courts. As such, his claims are procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

### S – <u>Cross Examination of Detective Snell</u>

Petitioner claims that the trial court erred in "refusing the Petitioner of his right to question Detective Sergeant, Jeffrey Snell, under oath about the West Manchester Township Police Department's Professional Police Misconduct concerning their underlying motive(s) to fabricate all of the alleged criminal charges against the Petitioner, that began with and includes their ongoing racial discrimination and ongoing malicious vindictive prosecution against the Petitioner." (Doc. 9 at 42).

Petitioner has failed to preserve and present this claim to the state courts for review. As such, this claim is procedurally defaulted. <u>See</u> <u>McCandless, 172 F.3d at 260</u>. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

### T – <u>Closing Argument</u>

Petitioner alleged trial court error when the trial judge "intentionally continued to interrupt the Petitioner during his closing argument, and ultimately denied the Petitioner to explain his theory of defense to the jury." (Doc. 9 at 43). This claim was denied by the Pennsylvania Superior Court as follows:

Our review of the complete trial transcript indicates that Appellant was not deprived of the opportunity to present his theory of the case. It is apparent from his cross-examination of the Commonwealth's witnesses, the direct examination of his own witnesses, and his closing argument that he was able to convey his theory of defense to the jury. During closing arguments, he quite clearly informed the jury that he was just an employee of Above the Rest Tree Service, and at the time of the crimes, he was not able to do physical labor that some of the victims had testified they had seen him doing. **See** N.T. at 567-68. The court properly forbid Appellant from arguing facts not in evidence and from testifying during his closing argument. This issue, thus, lacks merit.

(Doc. 33-3 at 248-49). The Court finds no error, as the trial court properly forbid Petitioner from arguing facts not in evidence and from testifying during his closing argument. As such, the Court finds this claim meritless.

### U – <u>Contempt Charges</u>

Petitioner alleges that the trial judge "intentionally erred and abused his discretion when he vindictively charged, vindictively convicted and vindictively sentenced the Petitioner with direct contempt of court three (3) times in front of the jury during trial." (Doc. 9 at 43). This claim is both unexhausted and procedurally defaulted.

Petitioner never challenged his contempt proceedings. In fact, the Superior Court noted that "[t]he contempt convictions are not part of this appeal." (Doc. 33-3 at 214). As such, this claim is procedurally defaulted. <u>See</u> <u>McCandless, 172 F.3d at 260</u>. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute

a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

### V – <u>Sentencing</u>

Petitioner challenges the aggregate sentence of seven (7) years on two of his convictions, which was subsequently modified to five (5) years, as "extremely harsh[] and excessive[]" and that the court did not properly consider his prior record score, his educational background or his chronic illness or medial needs. (Doc. 9 at 43). Petitioner claims that he was sentenced "contrary to the Pennsylvania Sentencing Commission's recommendations." Id.

Petitioner appealed his sentence to the Pennsylvania Superior Court; however, the court did not address the merits, finding that Petitioner failed to raise a substantial claim. (Doc. 33-3 at 249). Specifically, the Superior Court found that:

> Where the trial court has the benefit of a PSI, our Supreme Court has held that "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009 (discussing **Commonwealth v. Devers**, 546 A.2d 12, 18-19 (Pa. 1988)).
>
> An argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. **Commonwealth v. Hanson**, 856 A.2d 1254, 1257-58 (Pa. Super. 2004). **See also Commonwealth v. Griffin**, 804 A.2d 1,

9 (Pa. Super. 2002) (citing **Commonwealth v. Williams**, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en banc*) (an allegations that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence)).

Finally, an appellant's challenge to the consecutive nature of his sentence raises a substantial question only where the defendant articulated particular reasons why consecutive sentences were unreasonable. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1273 (Pa. Super. 2013).

Appellant generally asserts that he "was sentenced contrary to fundamental norms" but does not provide a colorable argument to support his bald assertion. Response Brief at 59 (unnecessary capitalization omitted). Moreover, he does not point to any specific provision of the Sentencing Code that the sentencing court ostensibly violated. His bald assertions that the court failed to consider various mitigating factors and that it should have imposed concurrent rather than consecutive sentences do not raise a substantial question. **See Commonwealth v. Trippett**, 932 A.2d 188, 201-03 (Pa. Super. 2007) (bald allegations of excessiveness insufficient to permit discretionary review).

Because we conclude that Appellant has failed to raise a substantial question as to the appropriateness of his sentence, we will not address the merits of Appellant's sentencing claim.

(Doc. 33-3 at 250-252). The Court finds no error in the Superior Court's decision.

Allegations that a state tribunal abused its discretion under state law, however, do not subsume a federal constitutional question. In fact, habeas challenges to a state court's sentencing discretion are unreviewable by a federal court provided that the sentence lies within the statutory guidelines, it is not based upon arbitrary considerations, and the defendant's

constitutional rights were not violated. See Estelle, 502 U.S. at 67–68 (explaining that federal habeas courts are not permitted to review questions of state law); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (same); Wainwright v. Sykes, 433 U.S. 72, 81 (1977) (indicating that questions of state substantive law are not cognizable on federal habeas review); Townsend v. Burke, 334 U.S. 736, 741 (1948) (stating that when a state "sentence [is] within the limits set by the statute, its severity would not be grounds for [habeas] relief"); see also Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42–43 (3d Cir.1984) (ruling that a challenge to a state court's sentencing discretion was not cognizable in federal habeas petition); Smith v. Kerestes, Civ. A. No. 08–0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits").

In this case, Petitioner does not explain in any persuasive way how the sentences imposed for his multiple serious criminal offenses were either unlawful or unconstitutional. He does not state that they in any exceeded the limits set by statute. Instead, he generally contends that the trial court should have merged the offenses when imposing the ultimate sentence and faults the sentencing judge for imposing multiple sentences to be run consecutively

with one another. In Pennsylvania, the imposition of consecutive sentences is within the sound discretion of the trial court. See Commonwealth v. Burkhardt, 586 A.2d 375 (Pa. 1991); Commonwealth v. Hoag, 665 A.2d 1212 (Pa. Super. 1995). Where state courts enjoy discretion in determining whether to impose consecutive or concurrent sentences for multiple convictions, federal courts have found that habeas relief is not available to attack the trial court's exercise of its discretion. See, e.g., Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (where Nevada prisoner challenged the trial court's imposition of consecutive sentences without explanation, the circuit held that "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus").

Petitioner's averments that his sentence is too severe do not warrant relief. The sentencing court ultimately sentenced Petitioner to three to seven years, with the seven years being reduced to five, on four cases in which Petitioner preyed upon older women. At the time of Petitioner's sentencing, the sentencing court had heard from victims, from Petitioner, and had the benefit of a pre-sentence investigation. The sentence fashioned by the sentencing court was an appropriate sentence made after careful consideration of all relevant sentencing factors. Accordingly, the Court finds no error and denies Petitioner relief on this claim.

### W – <u>Civil Forfeiture</u>

Petitioner raises claims concerning the civil forfeiture action filed against him as a result of the charges and eventual convictions against him. (Doc. 9 at 44). Specifically, he claims that the forfeiture suit is untimely and "intentionally fabricated." Id. Because, at the time of the filing of Petitioner's federal habeas petition, the Petitioner's forfeiture trial had yet occurred, the Court finds Petitioner's challenge to such suit as premature. Regardless, such a claim is not cognizable in federal habeas review.

A federal district court may entertain a writ of habeas corpus "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "Courts have opined that §2254 may 'not be used as a vehicle for challenging a civil forfeiture judgment or decree by a state court'," as §2254 is available for persons in custody pursuant to the judgment of a state court. Cannon v. Kelly, No. 3:07CV583 DPJ–FKB, 2012 WL 1038802, at *10 (S.D. Miss. Mar.29, 2012) (citing Tharpe v. Quarterman, Civil Action No. 4:07cv494, 2007 WL 2491855, at *1 (N.D. Tex. Sept.5, 2007)); see also Ozoroski v. Klem, No. Civ. A. 04–561, 2004 WL 1446046, at *16 n. 16 (10th Cir. Jan. 24, 1997) ("[T]he accuracy of the [state] forfeiture proceedings falls beyond this Court's province on habeas corpus review"). Thus, this claim is to be dismissed.

### X – **Conspiracy**

Petitioner claims the trial court judge and Commonwealth conspired to have him convicted of the charges set forth against him. (Doc. 9 at 47). Aside from being unexhausted and procedurally defaulted, the Court finds this claim patently frivolous. There is no evidence anywhere that Judge Kelley colluded with the Commonwealth to secure Petitioner's conviction. The Pennsylvania Superior Court upheld Judge Kelley's evidentiary rulings and found no abuses of discretion. That Petitioner is unhappy with the result of his jury trial does not mean that there was a mass conspiracy against him or that his trial was unfair. As this claim by Petitioner is nothing more than bold allegations without any factual or legal backing, his claim will be dismissed.

### Y – **Judicial Intervention**

Petitioner does not raise an actual claim that requires adjudication. This paragraph is merely a request for this Court to review his petitions and assume jurisdiction of the case. The instant adjudication of Petitioner's federal habeas moots this claim.

## IV.   **Certificate of Appealability**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the

denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## V.   Conclusion

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 27, 2022**
16-1775-01

- 46 -